IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DEMETRIUS BOARDS | : | |
| 660 Ridgedale Ave. | : | |
| Woodbridge, NJ 07095 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. _____ |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| ADIDAS AMERICA, INC. | : | |
| d/b/a ADIDAS | : | |
| 5055 N. Greeley Ave. | : | |
| Portland, OR 97217 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Demetrius Boards ("Plaintiff") against Adidas

America, Inc. ("Defendant") for violations of Section 1981 of the Civil Rights Act of 1866

("Section 1981" - 42 U.S.C. § 1981), the New York State Human Rights Law ("HRL" - N.Y.

Exec. Law §290 *et seq.*) and the New York City Human Rights Law ("NYCHRL" – N.Y.C.

Admin. Code §8–101 *et seq.*).[1] As a direct consequence of Defendant's unlawful actions,

Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff intends to amend his complaint to include racial discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000d *et. seq.*) once his claims have been administratively exhausted with the EEOC and the EEOC issues a right-to-sue letter. Any claims under Title VII will mirror his claims asserted herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state and city-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendant because of its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Southern District of New York.

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult individual, with an address as set forth in the caption.

7.      Defendant Adidas America, Inc. is a corporation that manufactures and supplies sport shoes, apparel and accessories. Defendant has multiple retail locations throughout the United States, including the location at which Plaintiff worked – 565 Fifth Avenue, New York, NY.

8.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Plaintiff is an African-American male.

11.     Plaintiff was hired to work for Defendant on or about October 10, 2016.

12.     Throughout his tenure with Defendant, Plaintiff was employed as the Associate General Manager ("AGM") of Sales for Defendant's 565 Fifth Avenue, New York, NY location.

13.     Plaintiff reported to various General Managers during his employment with Defendant including Keith Bryant, Jerome McCoy and Tanisha Crichlow.

14.     However, Plaintiff also reported to Defendant's Store Director, Sahmewee Archondo (Asian-American) who remained a constant direct report since the date of his hire.

15.     While employed with Defendant, Plaintiff was the only African American (black) AGM and was subjected to multiple forms of racial discrimination by Defendant's management and staff. For example:

      i.   Plaintiff was the only AGM that was not provided with an expense card. Instead, Plaintiff had to pay for certain expenses out of his own pocket, such as hotel rooms and copies of keys;

     ii.   Plaintiff had policies selectively enforced against him which were not enforced against his non-black counterparts;

iii. Every year, AGMs were supposed to be evaluated and issued an evaluation by their superior. In 2017, Plaintiff was the only AGM who was evaluated and by a peer, one Hector Vazquez (who was also an AGM).

iv. Mr. Vazquez made negative comments about Plaintiff's race, including but not limited to stating that Plaintiff was "pro-black" and that he favored black employees – which was completely false and baseless.

v. Plaintiff was treated in a rude and demeaning manner by Defendant's management unlike his non-black co-workers;

vi. When Plaintiff would ask for assistance or help on his team, Defendant's management refused to provide him with help or on one occasion transferred an individual to his team when they knew this individual was going to be terminated in the near future. However, when other non-black AGM's would ask for assistance on their team it was readily and freely given; and

vii. Unlike other non-black AGMs, Plaintiff was required to work all three shifts (morning shift, mid-day shift and closing shift) and consecutive weekends.[2]

16.    The discriminatory treatment was so severe that Plaintiff was forced to complain to Defendant's upper management and Human Resource Department in attempts to rectify the hostile work environment that he was being subjected to.

---

[2] This list contains merely examples of the ways that Plaintiff was discriminated against because of his race and is not intended to be an exhaustive.

17.     First, Plaintiff complained to Ms. Archondo regarding the racial discriminatory treatment that he was being subjected to, however, she failed to do anything to investigate or resolve his concerns.

18.     After getting no resolution from Ms. Archondo, Plaintiff escalated his concerns of racial discrimination to Tara Caldwell (Senior Human Resources Manager – New York), but she too failed to properly investigate or take any remedial action.

19.     Therefore, in yet another effort to try and improve the racially hostile environment he was working in, Plaintiff reiterated his concerns of racial discrimination to Mike Campbell (Senior Human Resources Manager – North America). Mr. Campbell, however, followed in the footsteps of Defendant's other management personnel and never addressed Plaintiff's complaints.

20.     Rather than investigating or taking any form of remedial action to rectify the racially discriminatory hostile work environment that Plaintiff was being subjected to, Plaintiff was faced with increased hostility and animosity in the form of pretextual discipline and his ultimate termination.

21.     For example, in close proximity to his last complaint of discrimination, Plaintiff was issued a Final Written Warning on April 23, 2018 for alleged policy and procedure violations.

22.     Defendant's progressive discipline procedure is as follows:

        First Step: Documented Verbal Warning;

        Second Step: First Written Warning;

        Third Step: Second Written Warning; and

        Fourth Step: Final Written Warning.

23.     Defendant did not follow its own progressive discipline policy in issuing Plaintiff his aforesaid Final Written Warning, as Plaintiff had been issued no discipline prior to April 23, 2018. Instead, Defendant chose to skip three levels of discipline in an attempt to expedite his termination because of his race and/or complaints of race discrimination.

24.     Plaintiff's April 23, 2018 Final Written Warning was riddled with falsities which were fabricated solely to create a paper trail with respect to Plaintiff. Furthermore, there are multiple "infractions" listed on Plaintiff's Final Written Warning which other non-black employees committed, but had not been noticeably disciplined for same.

25.     Not long after being issued a Final Written Warning, Plaintiff was ultimately terminated from his employment with Defendant.

26.     In a letter dated May 29, 2018, Plaintiff was informed that he was being terminated from his employment with Defendant effective May 30, 2018. The alleged reason for Plaintiff's termination was "fail[ure] to meet performance and behavior expectations" and continued alleged violations of "the time and attendance policy."

27.     Just like his Final Written Warning, Plaintiff's termination was completely pretextual.

28.     For example, not only did Defendant fail to follow its own progressive discipline regarding policy violations and/or performance (described *supra*), but Defendant also failed to follow its own progressive discipline policy regarding time and attendance discipline.

29.     For example, Defendant's time and attendance policy states, "[t]he Progressive discipline process issued for attendance infractions will begin once the employee has had six occurrences within a rolling twelve (12) month period."

30.     Plaintiff was never informed of or given any discipline indicating that he had reached six (6) occurrences under Defendant's time and attendance policy, let alone enough occurrences to result in termination.

31.     Upon information and belief, there were multiple non-black employees who had committed more egregious violations of Defendant's policies than what Plaintiff was accused of, however, they were not terminated like Plaintiff.

32.     Plaintiff believes and therefore avers that he was terminated because of his race and/or complaints of race discrimination.

### Count I
### 42 U.S.C §1981 ("Section 1981")
### ([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)

33.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34.     Plaintiff believes and therefore avers that he was subjected to a hostile work environment during his employment with Defendant due to his race and/or complaints of racial discrimination through disparate treatment, pretextual admonishment and demeaning and/or discriminatory treatment towards him.

35.     Plaintiff also believes and therefore avers that he was issued a pretextual Final Written Warning and ultimately terminated from his employment with Defendant because of his race and/or because he complained of racial discrimination to Defendant's management and Human Resources Department.

36.     These actions as aforesaid constitute violations of Section 1981.

## Count II
### New York State Human Rights Law ("HRL")
**([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

37.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38.    Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count I of this Complaint, *supra,* as such actions constitute identical violations of the HRL.

39.    These actions as aforesaid constitute violations of the HRL.

## Count III
### New York City Human Rights Law ("NYCHRL")
**([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

40.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41.    Plaintiff re-asserts and re-alleges each and every allegation as set forth in Counts I and II of this Complaint, *supra,* as such actions constitute identical violations of the NYCHRL.

42.    These actions as aforesaid constitute violations of the NYCHRL.

**WHEREFORE,** Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B.    Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law;

E.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable law; and

F.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:     */s/ Adam C. Lease*
        Adam C. Lease, Esq. (Bar # AL4731)
        3331 Street Road
        Two Greenwood Square, Suite 128
        Bensalem, PA 19020
        (215) 639-0801
        *Attorneys for Plaintiff*

Dated: August 21, 2018